CHARLES DOLLMAN ET AL. *v.* J. C. MOORE.

1. CONSTRUCTION OF STATUTES. *"Person." Municipality not embraced, when.*

   Generally, where a statute deals primarily with matters foreign to the ordinary functions of public corporations, and imposes burdens or liabilities on persons without any corresponding benefits, the word "person" will not be held to embrace municipal corporations exercising a part of the state's sovereignty.

2. SAME. *Attachment in chancery. Garnishment. Code* 1880, §1832. *Case.*

   A municipal corporation, or its board of school-trustees, is not a "person" within the meaning of §1832, code 1880, conferring upon chancery courts jurisdiction of attachment suits against non-resident, absent or absconding debtors and persons in this state, who have in their hands effects of, or are indebted to, such debtors.

3. ATTACHMENT IN CHANCERY. *Non-resident. Jurisdiction. Remedy at law.*

   Independently of statute, by virtue of its general equity powers, a chancery court may, without a judgment at law and *nulla bona* return, subject to the demands of creditors the effects in this state of a non-resident debtor. *Zecharie* v. *Bowers*, 1 Smed. & M., 584, overruled.

4. MUNICIPALITY. *Garnishment of. Decree; who may object.*

   Where a municipality, against which, as garnishee, a decree has been rendered in an attachment suit in chancery against a non-resident, fails to object that it is not subject to garnishment, the objection, not being jurisdictional, cannot be made by the defendant in attachment on appeal.

FROM the chancery court of Yazoo county.

HON. H. C. CONN, Chancellor.

The case is stated in the opinion.

*Williams & Williams*, for appellants,

Filed a lengthy brief and argument, discussing all the assignments of error, and as to the matters passed on by the court, making the following points, and citing the following authorities:

The board of school-trustees is a public corporation, ex-

ercising a part of the sovereignty of the state, and having public duties and functions, and, as such, it is not embraced in the word " person " in the statute. It is not subject to garnishment. In support of this view, see 8 Md., 95; 6 Vt., 121; 26 Ala., 498; 36 *Ib.*, 624; 45 Ill., 1; 9 Heis., 511; 45 Ill., 134; 4 Minn., 184; 54 Miss., 363; 10 Am. St. Rep., 196; 23 Am. Rep., 667; 21 *Ib.*, 277; 12 Conn., 404; 29 Penn., 173; 15 Wis., 193; 40 Miss., 67; 8 Mass., 247; 7 *Ib.*, 246; 11 Conn., 123; 3 Bax. (Tenn.), 368; Freeman on Executions, § 133. The rule is impliedly recognized in *Board Supervisors* v. *Gillen*, 59 Miss., 198. See also 25 Ill., 596; 7 Mon., 439; 12 Gill & J., 399; 26 Wis., 449; 49 *Ib.*, 449; 14 *Ib.*, 291; 37 Ga., 240; 8 Am. & Eng. Enc. L., 1135.

The objection that the municipality is not subject to garnishment, is jurisdictional, and it cannot be waived. The garnishee cannot, without his debtor's consent, subject his property to garnishment by waiver. 33 Am. Rep., 422. The exemption from garnishment is granted from public necessity, and no one can waive it. 8 Am. & Eng. Enc. L., 1135, notes 4 and 5, and cases cited. It would be unjust to put it in the power of a garnishee to prefer certain of the creditors by its waiver. Besides, there is no express waiver in this case, and the courts will not presume one.

*Calhoon & Green*, on the same side.

School-boards are not garnishable. 8 Am. & Eng. Enc. L., 1135; Drake on Attach., § 516; Wade on Attach., § 419; *Board* v. *Gillen*, 59 Miss., 198. The question is simple and sharp, and the authorities compiled and easily accessible. We refer especially to 54 Ind., 501; 54 Ga., 399; 52 Vt., 204.

The weight of authority is that the exemption from garnishment cannot be waived. 8 Am. & Eng. Enc. L., 1135; Drake on Attach., § 516.

*Henry & Richardson* and *Campbell & Hudson*, for appellee.

Section 1832, code 1880, confers the remedy by attachment in chancery against non-resident debtors and persons in-

debted to them in this state. Section 1898 of the code, defining the remedy, provides for the attachment " of the indebtedness of the defendant in this state to such non-resident." The terms could hardly be broader. They embrace artificial, as well as natural persons. The rules for construing the code require this. Code 1880, § 13.

Our supreme court has uniformly construed statutes of this kind favorably to the creditors, even holding, against the weight of authority, that an officer holding money under execution, may be garnished. *Burleson* v. *Milan*, 56 Miss., 399.

As a deduction from all the authorities, we contend as follows:

1. A public corporation may be garnished, especially when the debtor is a third person, not the officer or agent of the corporation.

2. The true test whether a corporation may be garnished is whether it may be sued.

3. If a garnishment will not lie at law, it will lie by way of creditors' bill on attachment in equity.

4. If there is an exemption from garnishment, it is a personal one, and must be pleaded by the corporation itself, not by the debtor.

In support of the several propositions contended for, see 38 N. J. L., 88; Dillon, Mun. Corp., § 65; 4 Clark (Iowa), 302; Drake on Attach., § 516; 20 Conn., 416; Wade on Attach., § 345; Waples on Attach., § 234; 10 R. I., 285; 5 N. H., 13; 15 Ohio St., 462; 121 Mass., 380; 49 Mo., 568; 21 *Ib.*, 239; 11 *Ib.*, 59; 10 Mon., 515, s.c. 24 Am. St. Rep., 67.

If a non-resident debtor cannot be garnished in cases like this, merely because his debtor is a public corporation, the resident creditor will be practically without remedy. It is significant that the case, 54 Ind., 501, relied on by appellant, distinguishes the Missouri case, last cited above, by the fact that it was a bill in equity to subject a debt from the corporation.

Argued orally by *S. S. Calhoon*, for appellant.

COOPER, J., delivered the opinion of the court.

The appellee exhibited his bill in the chancery court of Yazoo county against Charles Dollman, a non-resident of this state, and against the board of school-trustees of Yazoo City.

The bill alleges that Dollman is indebted to complainant for work and labor done by him in and about the erection of a school-building, which Dollman contracted to build, and did build, under a contract with said board of trustees, and that said board of trustees is indebted to Dollman in a sum in excess of the debt due complainant. The prayer is that the board of trustees may be directed to pay to complainant, out of the funds in its hands due to Dollman, the amount he owes complainant.

The board of trustees answered, admitting an indebtedness to Dollman, but stating that the building had not been finished, and that it could not be known what amount, if any, would remain in its hands. Subsequently the board filed another answer, stating that the building had been finished, and the board had in its hands the sum of $1,500 as balance due on the building, but that since its former answer had been filed the board had received notice that Dollman had transferred his right to the fund to the Cole Manufacturing Company, which company it asked might be made a party to the proceedings.

The Cole Manufacturing Company was admitted to defend, but, since it is not disputed that its claim to the fund was by virtue of an assignment made by Dollman after process served in the original proceeding, its answer need not be considered.

Dollman demurred to the bill, and, that being overruled, he answered, and the cause proceeded to final hearing, when a decree was made in favor of complainant, from which decree Dollman and the Cole Manufacturing Company appeal.

The defense made by Dollman to the proceeding rests upon three grounds:

1. That the proceeding is a statutory attachment in chancery, and that the demand sought to be subjected is not within the terms of the statute.

2. That it is against public policy to permit governmental agencies to be garnished, or drawn into controversies with private persons touching matters with which they have no concern, and that this immunity is not a mere privilege which may be waived by the body-politic, but is jurisdictional in character, and may be insisted on by any party to the suit, and at any stage of the proceedings.

3. A denial of the debt sought to be collected.

It is evident that the proceeding was instituted and prosecuted as one under our statute regulating attachments in chancery, and, if it be true that it can be supported only by the statute, it must fail if the statute has no application because of the character of the debt sought to be subjected to the complainant's demand. The provision of the code providing for attachments in chancery against non-residents is as follows:

" The said chancery courts shall have jurisdiction of attachment suits against any non-resident, absent or absconding debtor, who has lands or tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor." Code of 1880, § 1832.

It is not pretended that the defendant has lands or tenements in this state. The statutory jurisdiction must, therefore, rest upon that clause of the statute giving attachment against a non-resident, absent or absconding " debtor, and *persons* in this state who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor."

Is a municipal corporation a " person " within the meaning of the statute?

Primarily, the word " person " means a natural person, but

when used in statutes, its signification is so controlled by the context that it may be said to rest upon it. Ordinarily, it may be supposed that in general statutes the word is intended to include both natural and artificial persons. Lord Blackburn in *Pharmaceutical Society* v. *London, etc., Association*, 5 App. Cases, 857.

The word may or may not include the state or its subdivisions. 18 Am. & Eng. Enc. L., title Person, p. 403, note 2, where many authorities are collected.

Whether a state, or a municipality or other corporation exercising a subdivision of its sovereignty, is included by the terms of a statute—not being expressly named—must be determined by a consideration of the subject-matter of the statute, its purpose and effect. When the statute primarily refers to matters foreign to the ordinary functions of public corporations, and imposes burdens, duties or liabilities upon them, without any corresponding benefits, the inference must be that it was not the legislative purpose that such corporations should be subject to its provisions. The inconvenience which would arise from subjecting these bodies, created for the performance of public functions, to be proceeded against as garnishees at law and in equity, and when a mere neglect to respond to the summons would subject the public represented by such corporation to the burden of a judgment for the demand of the attaching creditor, is strongly persuasive against such construction of the statute as would include these bodies. We are, therefore, of opinion that the garnishee in this case was not a "person" having in his hands effects of, or indebted to, the non-resident defendant, and that the proceeding, in so far as it was based upon the statute, must fail.

It remains to be inquired whether, without regard to the statute, but under the general principles of equity, the decree should be upheld.

By the act of June 7, 1822 (Hutch. Code, 764), the statutory remedy of attachment in chancery against non-

resident defendants was provided.  More than twenty years afterwards a bill was exhibited by a non-resident against a non-resident owning lands in this state, to subject the land to the payment of a debt for which complainant had recovered judgment in another state.  The bill was framed without reference to the statute, and was sought to be supported upon the general principles of equity.  Judge Clayton, in delivering the opinion of the court, said : "There was an order of publication in the chancery court, and a decree *pro confesso* entered, which, however, was afterwards set aside, and the bill dismissed.  The ground of dismission was the want of jurisdiction, the chancellor being of opinion that his court had no jurisdiction over the person of the defendant, and none over the land sought to be subjected, unless there had been a previous judgment at law in this state. Apart from any legislative enactment, this view was certainly correct.  By the recognized principles and rules of proceedings in the English chancery court, this case would be beyond the sphere of its jurisdiction."  The court then proceeded to show that by virtue of the statute the bill might have been so amended as to be maintainable, but the decree, being correct on the bill as framed, it was affirmed.  *Zecharie* v. *Bowers*, 1 S. & M., 584, s.c. 3 *Ib.*, 641.  Since the decision in this case, all attachments in chancery against non-residents have been, so far as we are advised, under the statute, and there has been no case in which it has been sought to uphold the jurisdiction of the court in this class of cases without reference to its provisions.  There are, however, innumerable *dicta* in cases since *Zecharie* v. *Bowers*, in which the rule therein announced has been declared.  The subject has not been examined since the decision in that case, for the reason that no necessity has existed for appealing to the general jurisdiction of equity, since almost every imaginable case where relief can be afforded at all is within our statute. But we are not satisfied with the rule announced in *Zecharie* v. *Bowers*.  We think the decision there should have

been for the complainants. The general rule undoubtedly is that a court of equity will not lend its aid to enforce a legal demand until there has been a judgment at law, and, in some cases, an execution thereunder, with a return of *nulla bona.* But the rule never was of universal application, and was limited by the reason upon which it rested. When the debtor died or was beyond seas, the complainant could have relief in equity. The principles upon which the rule rested were that legal questions should be tried by courts of law, and that suitors should exhaust their legal remedies before resorting to courts of equity. But how can a creditor obtain a judgment at law upon which the jurisdiction of equity would rest against a non-resident debtor? He might, it is true, go to the jurisdiction of the debtor, and there sue and recover judgment, and have execution and *nulla bona* thereon; but such proceedings would advance him no step, for when a judgment at law is essential, it must be a domestic one. *Farbell* v. *Griggs,* 3 Paige Ch., 208. In the absence, then, of a statutory remedy by attachment at law or in equity, it would be impossible to subject the estate of a non-resident to the payment of his debts.

It would be a surprising condition of affairs if a non-resident debtor owning property in this state to creditors resident here could never have been compelled to pay his debts by the courts of this state exercising their common law jurisdiction. The authorities are numerous that, under such circumstances, resort may be had to equity in the first instance.

In *Farrar* v. *Haselden,* 9 Rich. Eq. (So. Ca.), 331, the court said:

"When a debtor is absent from this state, having property within the state which cannot be reached by the ordinary process of law, it has been a practice much older than *Kinloch* v. *Meyer* (Speer's Eq., s. c. 427) to grant relief in this court, as against such property, to the creditors of such absent debtor. In such case, he may have taken no steps to recover,

or establish his demand at law, because the law afforded no process by which he could make his debtor a party in court."

In *Merchants' Nat. Bank* v. *Paine*, 13 R. I., 593, Durfee, Ch. J., delivering the opinion of the court, said: "If it were true that the only reason for the rule is the exhaustion of legal remedies, we should not hesitate at all to assert the jurisdiction, for, very clearly, where no legal remedy exists, none can be exhausted, and the reason for the rule would cease, and, with the reason, the rule itself. *Cessante ratione legis, cessat ipsa lex.* There is, however, another reason for the rule, namely, that a court of law is the proper tribunal, not only to afford a remedy for legal claims, but also to adjudicate them. It seems to be well settled, however, that a creditor may proceed in equity without getting a judgment at law, if his debtor be dead. And, if he can so proceed, if his debtor be dead, then there can be no insuperable reason against his so proceeding while his debtor is alive. *Thompson* v. *Brown*, 4 Johns. Ch., 619; *O'Brien* v. *Coulter*, 2 Blackf., 421; *Steeve* v. *Hoagland*, 39 Ill., 264; *Whitney* v. *Kimball*, 4 Ind., 546; *Thorp* v. *Felty*, 6 B. Mon., 6; *Evingham* v. *Vanderbilt*, 19 N. Y. Sup. Ct., 75; *Offutt* v. *King*, 1 McArthur, 312."

The jurisdiction of courts of equity to afford relief to one not having reduced his demand to judgment against a nonresident defendant having property in the state, has been affirmed in many other cases. *Scott* v. *McMillen*, 1 Litt., 302; *Peay* v. *Morrison's Ex'r*, 10 Gratt. (Va.), 149; *Bank* v. *Whetman*, 124 N. Y., 241; *Pope* v. *Solomons*, 36 Ga., 541; *Smart* v. *Abbett*, 102 Ind., 233; *Pendleton* v. *Perkins*, 49 Mo., 565.

If the decision in *Zecharie* v. *Bowers*, 1 S. & M., 584, announced a rule of property, we should, notwithstanding our dissent from it, adhere to the decision, on the principle of *stare decisis;* but such is not the case, and, its only effect being to deny a remedy, we feel no hesitation in declaring a contrary rule, and overruling that decision.

We are not to be understood to say that a court of chan-

cery will, in the exercise of its jurisdiction, permit municipal
corporations to be subjected to decrees in favor of creditors
of those to whom it may be indebted in all cases and under
all circumstances.    Certainly this should not be done when
the effect would be to hamper or restrict them in the per-
formance of public functions, or impede the execution of any
contract into which they have entered.    The exercise of a
proper judicial discretion may be safely left to the courts, to
be exercised as occasion requires.    It is sufficient to say, in
this case, that the trustees of Yazoo City made no objection
to submitting to complainant's decree, and the objection, not
being jurisdictional, cannot be made by the appellants.

We have examined the evidence, and are not prepared to
disturb the conclusion of the chancellor on the facts, which
was reached upon weighing conflicting testimony.

*Affirmed.*