LOVE, SUPERINTENDENT OF BANKS, *v.* MISSISSIPPI COTTON-SEED PRODUCTS CO.

(Division A. Jan. 21, 1935.)

[159 So. 96. No. 30991.]

**Moody & Johnson,** of Indianola, and **Green, Green & Jackson,** of Jackson, for appellee, on motion.

Cooper & Thomas, of Indianola, for appellant, on motion.

Flowers, Brown & Hester, of Jackson, and Cooper & Thomas, of Indianola, for appellant.

Moody & Johnson, of Indianola, and Green, Green & Jackson, of Jackson, for appellee.

**Smith, C. J.**, delivered the opinion of the court on motion.

This is a motion to dismiss the appeal, the ground of which is that the appellant failed to execute and file an appeal bond.

The appellant, as superintendent of banks, in charge of the liquidation of the Sunflower Bank, filed an original bill of complaint against the appellee for the collection of a debt alleged to be due by the appellee to the bank, and the appeal is from a decree dismissing this bill of

complaint. An appeal was granted without the necessity of an appeal bond.

The appellant had the right to an appeal under section 13, Code 1930, to which the order allowing him so to do added nothing. His claimed right to appeal without bond is governed by section 76, Code 1930, which provides that: "The state, and any county, city, town, or village thereof, and the officials representing the state, county, city, town, or village, in any suit or action, and any state, county, city, town, or village officer who is a party to any suit or action in his official character, in which suit or action the state, county, city, town, or village is beneficially interested and the several incorporated, charitable or educational institutions established and maintained by the state, shall be entitled to appeal from a judgment, decree, decision, or order of any court or judge, from which an appeal may be taken, without giving an appeal bond.''

The ground of the motion to dismiss is that the appellant is not a state officer, and, if he is such, the state is not ''beneficially interested'' in the suit.

The appointment and duties of the state's superintendent of banks are governed by section 3755 et seq., Code 1930, and the appellee's contention is that to hold him to be a public officer thereunder would violate sections 102 and 250 of the Constitution of the state, because of the method of his appointment and the qualifications required of him therefor. It will not be necessary for us to decide this question, for, if we should hold that the appellant is not a public officer in the constitutional sense, as to which we express no opinion, nevertheless he is within the meaning and intent of section 76, Code 1930. That statute uses both the words "officials representing the state" and "any state . . . officer." An official is not necessarily an officer in the technical sense, but may be "one having subordinate administrative or executive powers in a governmental or public institution.'' Webster's New International Dictionary. Section

3755 et seq., Code 1930, charges the state's superintendent of banks with the performance of certain administrative duties, among which is the collection, by judicial process, of debts due banks being liquidated by the state banking department, and section 76, Code 1930, was clearly intended to apply to all persons representing the state in judicial proceedings under a delegated authority so to do. To hold otherwise would permit the letter of the statute to destroy its spirit and manifest purpose.

If it is necessary for the state to be beneficially interested in this suit, that fact appears. Sections 3755 et seq., Code 1930, which create the state banking department, were enacted under the state's police power for the supervision of the banking business, its theory being that the welfare of the state will be conserved by the protection of the welfare of each of its citizens in dealing with banks located in the state and operating under its laws. The words "beneficially interested" cannot be limited to a financial interest in the particular suit, but include interest therein of the state in its governmental capacity.

The motion will be overruled.

Cook, J., delivered the opinion of the court.

Appellee, Mississippi Cottonseed Products Company, owns and operates an oil mill under the trade-name of "Sunflower Cotton Oil Company," while during the ginning season of 1929-1930, W. R. Early, who was then president of the Sunflower Bank, owned and operated a cotton gin at or near Indianola, Mississippi, and was also engaged in the purchase and sale of cottonseed. Early in the 1929-1930 ginning season, the said W. R. Early was indebted to the Sunflower Bank in a considerable sum in the form of an overdraft, and he desired to procure additional money necessary to finance his operations during the remainder of the season. To secure his overdraft and further advances for the operation of his gin and the purchase of seed, the officials of the bank required Early

to execute a chattel mortgage on all cottonseed then in the seedhouses of said gin, and on all seed to be acquired by him during the 1929-1930 ginning season; and on September 25, 1929, this mortgage was duly executed and recorded in the office of the chancery clerk of Sunflower county. It recited that it was to secure all overdrafts owing to said bank on the date of the execution thereof and any other overdraft or overdrafts that the said Early might owe the bank during the ginning season of 1929-1930; and further provided that, if all the indebtedness thereby secured was not paid by December 15, 1929, then the Sunflower Bank might sell the seed conveyed as aforesaid.

In accordance with this arrangement, by means of overdrafts, Early secured from the bank money to completely finance the ginning operations of the Early Ginning Company, including drayage and the purchase of seed at the gin; and Early sold all the seed thus acquired, and on which the bank held the chattel mortgage, to the appellee at the market price. After the recordation of the said chattel mortgage on September 25, 1929, until the close of the ginning season, in the latter part of January, 1930, the purchase price of seed sold to the appellee by Early amounted in the aggregate to thirty-three thousand seven hundred thirty-four dollars and sixty-six cents, and of this sum appellee paid to Early the sum of thirty-two thousand four hundred forty-seven dollars, leaving a balance of one thousand two hundred eighty-seven dollars and sixty-six cents due for seed purchased from him. The greater part, if not all, of the thirty-two thousand four hundred forty-seven dollars that was paid to Early was applied on his indebtedness to the Sunflower Bank, leaving a balance of more than five thousand dollars still due the bank. At the close of the ginning season in January, 1930, appellee delivered to Early a complete statement of his account with it, and issued a check payable to him and the Sunflower Bank for the balance due, which included the balance of one thousand two hundred eighty-

seven dollars and sixty-six cents due for seed purchased, after the execution of the aforesaid mortgage, and also a further amount due Early for other seed and for drayage. This check was not accepted as a full settlement, and was revoked, and thereafter, Early having become further indebted to appellee, the balance of one thousand two hundred eighty-seven dollars and sixty-six cents owing for seed covered by the mortgage was applied on Early's indebtedness to appellee.

Shortly after the issuance of the aforesaid check to Early by the Sunflower Bank, the bank failed and was placed in liquidation, and J. S. Love, superintendent of banks, took charge of the defunct institution. Thereafter, in pursuance of an order of the chancery court, the Merchants Bank & Trust Company, a newly organized banking institution of Indianola, Mississippi, purchased practically all of the assets of the defunct bank, including the indebtedness of the said Early to the bank; and this indebtedness and the mortgage securing the same were duly assigned to the purchaser.

Thereafter the superintendent of banks, in charge of the liquidation of the insolvent bank, instituted suit in his own name, seeking recovery of the balance alleged to be due for cottonseed converted as hereinbefore set out. During the progress of that suit, on its motion, the Merchants Bank & Trust Company was substituted as party complainant instead of the superintendent of banks, and the bill of complaint was thereafter amended by making the said Early a party defendant, and praying for a personal decree against him for the balance then due on the indebtedness secured by the aforesaid mortgage. In the course of the trial of that cause, upon its being made to appear that the conversions complained of occurred before the date of the assignment to the substituted complainant, and that the right to recover for previous conversions of the mortgaged property was not assigned, the court entered a decree allowing the substituted complainant a recovery against W. R. Early for the balance due

of five thousand eight hundred twenty-six dollars and twenty-five cents, with interest, and dismissing the bill as against the Mississippi Cottonseed Products Company.

On appeal from that decree, the only contention was that, when the facts were fully developed and it was made to appear that the right of action for conversion was not assigned by the superintendent of banks to the substituted complainant therein, the court, although not requested so to do, should have, of its own motion, ordered the original complainant to be brought back into the case as the actual complainant. The court held that, in the absence of a request to reinstate the original complainant, the court committed no error in failing to do so. That was the only question involved on that appeal, and the only point decided. Love et al. v. Mississippi Cotton Seed Products Co., 161 Miss. 704, 137 So. 739.

At the affirmance of the above-mentioned cause, the superintendent of banks, in charge of the liquidation of the Sunflower Bank, brought the present suit against the Mississippi Cottonseed Products Company for conversion of the cottonseed covered by the assigned mortgage, and prayed for a recovery of the balance due for the cottonseed alleged to have been converted by it; and, upon the trial of the cause, the court denied complainant any relief and dismissed the bill of complaint, and from that decree the present appeal was prosecuted. Afterwards, upon the abolition of the office of superintendent of banks, under the provisions of section 95, chapter 146, Laws 1934, Forrest G. Cooper was appointed receiver of the Sunflower Bank, and was authorized to revive and prosecute this appeal, and an order permitting him to do so was duly entered.

Conceding for the purpose of this decision that the record discloses an original right of action against the appellee, then, in our opinion, this cause may be finally disposed of by a consideration of the further question as to whether or not such cause of action was vested in and

could be maintained by appellant, complainant below, when the bill of complaint was filed.

In the opinion in Love et al. v. Mississippi Cotton Seed Products Co., supra, it was said that, since the evidence showed that the conversions complained of occurred before the date of the assignment to the substituted complainant, and the right to recover for previous conversions of the mortgaged property was not contained in the terms of the said assignment, the court below dismissed the bill as to the appellee on the authority of Gabbert v. Wallace, 66 Miss. 618, 5 So. 394; and Gabbert v. Wallace was undoubted authority for the dismissal of the said bill. In that case it was expressly held that the right to sue for previous conversion of mortgaged property is not a part of the security which passes by an assignment of the debt, and that an assignment of a debt secured by a mortgage or deed of trust without an assignment of a right to sue for prior conversions of the mortgaged property confers no right upon the assignee to sue or recover for such conversions. That was all that was involved in Gabbert v. Wallace, and any language in the opinion therein, if there be any, from which the inference might be drawn that an original mortgagee who had assigned the debt and security could still maintain an action for conversions prior to such assignment, is not controlling upon that point.

By section 2128, Code 1930, it is provided that, "before a sale under a mortgage or deed of trust, the mortgagor or grantor shall be deemed the owner of the legal title of the property conveyed in such mortgage or deed of trust, except as against the mortgagee and his assigns, or the trustee after breach of the condition of such mortgage or deed of trust." And, so long as the mortgagee is the owner of the debt and incidental security, he may maintain an action for injuries to or conversions of the mortgaged property and apply the proceeds of any recovery therefor to the discharge of the mortgage debt. The mortgagee has the right to have the full, undi-

minished value of the mortgaged property applied to the discharge of the debt secured thereby; and the measure of his rights in the property or for injuries thereto is the amount of the debt owing to him. But the right to sue for conversions of the mortgaged property is one which the mortgagee may exercise or waive; and an assignment of the debt and security without a transfer to the assignee of any accrued right of action for conversion of the mortgaged property amounts to a waiver of such right of action. The interest of a mortgagee in the property conveyed, or the value thereof if disposed of by the mortgagor, is based solely on the mortgage, and is limited to the amount owing to him on the debt secured by the mortgage. In the case at bar, there is no debt due the appellant; consequently he has no action for injuries to or conversions of the mortgaged property.

The decree of the court below will therefore be affirmed. Affirmed.